## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **DAVID TYLER MOSS AND** | § | |
| **BRANDON KEATING** | § | |
| | § | |
| **Plaintiffs,** | § | **CIVIL ACTION NO.** |
| **Vs.** | § | **3:14-CV-03088-M** |
| | § | **(JURY)** |
| **MARKO PRINCIP,** | § | |
| **Individually, MARKO** | § | |
| **PRINCIP  d/b/a** | § | |
| **VIDEOGAMES YOUTUBE** | § | |
| **CHANNEL, MARKO** | § | |
| **PRINCIP** | § | |
| **d/b/a        ACHIEVEMENT** | § | |
| **GUIDE, MARKO PRINCIP** | § | |
| **d/b/a GAME GUIDE, LLC,** | § | |
| **VIDEOGAMES      YOUTUBE** | | |
| **CHANNEL,** | | |
| **AND BRIAN MARTIN** | | |
| | | |
| **Defendants.** | § | |

## PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
## AND BRIEF IN SUPPORT

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COME DAVID TYLER MOSS and BRANDON KEATING, PLAINTIFFS in the

above-referenced matter and Applicants herein, and file this Motion for Preliminary Injunction

and Brief in Support against Defendants MARKO PRINCIP, INDIVIDUALLY, MARKO

PRINCIP d/b/a VIDEOGAMES YOUTUBE CHANNEL, MARKO PRINCIP d/b/a

ACHIEVEMENT GUIDE, MARKO PRINCIP d/b/a GAMEGUIDE, LLC, and BRIAN

MARTIN (herein collectively, "Defendants"), and would show the Court the following:

# TABLE OF CONTENTS

Plaintiffs' Motion for Preliminary Injunction
and Brief in Support..........................................................................................................3

Appendix

# TABLE OF AUTHORITIES

1.    <u>Cases</u>

*Basicomputer Corp. v. Scott*, 973 F.2d 507, 512
(6th Cir.1992)............................................................................................................17

*Deerfield Med. Ctr. v. City of Deerfield Beach*,
661 F.2d 328, 337-38 (5th Cir.1981).......................................................................15

*Evergreen Presbyterian Ministries, Inc. v. Hood*,
235 F.3d 908, 918 (5th Cir.2000)............................................................................13

*Ferrero v. Assoc. Materials, Inc.*, 923 F.2d 1441,
1449 (11th Cir.1991)................................................................................................17

*Granny Goose Foods, Inc. v. Bhd. of Teamsters Auto
Truck Drivers Local No. 70 of Alameda Cnty. 8212 1566*,
415 U.S. 423 (1974).................................................................................................12

*LaRouche v. Kezer*, 20 F.3d 68, 74 n.7 (2nd Cir.1994)..............................................12

*Nowak v. Los Patios Investors, Ltd.*, 898 S.W.2d 9, 9-10
(Tex.App.—San Antonio 1995, no writ).................................................................13

*Peabody Coal v. UMW*, 416 F.Supp. 485 (E.D.Ill.1976).............................................18

*State v. Morales*, 869 S.W.2d 941, 947 (Tex. 1994)....................................................13

*Taiwan Shrimp Farm Vill. Ass'n v. U.S.A. Shrimp Farm Dev., Inc.*,
915 S.W.2d 61, 65 (Tex.App.—Corpus Christi 1996, writ denied)........................13

*Wilson v. Ill. S. Ry. Co.*, 263 U.S. 574 (1924)...........................................................17

*Winston v. Gen. Drivers, Warehousemen & Helpers*,
879 F.Supp. 719, 725 (W.D.Ky.1995)......................................................................18

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008)......................................13

2.    Statutes and Other Authorities

Fed. R. Civ. P. 65(a)..................................................................................................20

Fed. R. Civ. P. 65......................................................................................................12

Tex. Civ. Prac. & Rem. Ch. 17....................................................................................4

Tex. Civ. Prac. & Rem. §65.011(1), (2), (3), and (5)..................................................13

Tex. Bus. Org. Code §152.211(b)................................................................................13

## PARTIES AND SERVICE

1.    Plaintiff David Tyler Moss is an Individual who is a resident of North Carolina.

2.    Plaintiff Brandon Keating is an Individual who is a resident of Illinois.

3.    Defendant Marko Princip, an Individual who is a resident of Texas, has previously appeared in the lawsuit and may be served with process by serving him personally at 18032 Windflower Way, Dallas, Texas 75252, or wherever he may be found.

4.    Defendant Marko Princip D/B/A VideoGames YouTube Channel, an Individual who is a resident of Texas, may be served with process by serving him personally at 18032 Windflower Way, Dallas, Texas 75252, or wherever he may be found.

5.    Defendant Marko Princip D/B/A Achievement Guide, an Individual who is a resident of Texas, may be served with process by serving him personally at 18032 Windflower Way, Dallas, Texas 75252, or wherever he may be found.

6.    Defendant Marko Princip D/B/A Game Guide, LLC, an entity who is a resident of Texas, may be served with process by serving him personally at 18032 Windflower Way, Dallas, Texas 75252, or wherever he may be found.

7.      Defendant VideoGames YouTube Channel, a General Partnership based in Texas, may be served with process by serving its agent, Marko Princip, personally at 18032 Windflower Way, Dallas, Texas 75252, or wherever he may be found.

8.      Defendant Brian Martin, an Individual who is a nonresident of Texas, may be served with process at his home at the following address:  941 Cimarron Lane, Corona, California 92879, or wherever he may be found.  Service of said Defendant as described above can be effected by personal delivery.

9.      The Court has jurisdiction over the parties because Defendant Marko Princip is a resident of Texas, and Defendant Brian Martin pursuant to Tex. Civ. Prac. & Rem. Ch. 17.

10.      The Court has jurisdiction over the subject matter of this diversity action pursuant to 28 U.S.C. §1332

11.      Venue is appropriate in this Court pursuant to 28 U.S.C. §1446.

## INTRODUCTION AND FACTS

12.      Plaintiffs David Tyler Moss and Brandon Keating (collectively, the "Plaintiffs") are investors and partners in the VideoGames YouTube Channel.  Each plaintiff has a written contract with Defendant Marko Princip confirming his partnership, his rights to participate in the management of the VideoGames YouTube Channel, and his rights to receive a share of the revenue generated by the VideoGames YouTube Channel and all of its business endeavors.  The Plaintiffs each gave money to Defendant Marko Princip as an investment in the VideoGames YouTube Channel, expecting a return on their investment.  Despite the VideoGames YouTube Channel generating returns, Plaintiffs are not being compensated nor allowed to participate in the management of the VideoGames YouTube Channel in the manner they are rightfully entitled to.

Plaintiffs have attached an Appendix to this Motion, which is incorporated into this Motion by reference.

13. On or about March 9, 2012, Plaintiff Brandon Keating ("Mr. Keating"), Defendant Marko Princip, Defendant Marko Princip D/B/A Achievement Guide, Defendant Marko Princip D/B/A Game Guide, LLC (collectively "Mr. Princip"), John Brandt, and Edward Brandt entered into an agreement entitled "Game Guide, LLC Membership Agreement," (the "Membership Agreement") and attached hereto as Pls.' Ex. "A," App. 1-4, and incorporated herein by reference. The Membership Agreement provides that Brandon Keating is a 30% owner of the company, and 30% owner of any YouTube channel, sponsorship, or project with the exception of "TEAMNOBLE." Mr. Keating was given his 30% interest in exchange for the payment of $1,500.00 to Mr. Princip. The VideoGames YouTube Channel was a YouTube project initiated pursuant to the Membership Agreement.

14. The Membership Agreement provides that Mr. Keating will act as an advisor to the company, own 30% of the stock and interest of the company, and would have the right to make decisions on how the company grows. App. 2. In the event of a disagreement, Mr. Keating's vote would count for 30% of the vote. App. 2. Mr. Princip confirmed Mr. Keating was 30% owner of VideoGames Youtube Channel in an email sent June 21, 2014. Please see Pls.' Ex. "B," App. 5, attached hereto and incorporated by reference herein.

15. On or about May 21, 2012, Plaintiff David Tyler Moss ("Mr. Moss") and Mr. Princip entered into a Partnership Agreement (hereinafter "the Partnership Agreement") to be known as VideoGames YouTube Channel (hereinafter "VideoGames"), attached with this pleading as Pls.' Ex. "C," App. 6, and incorporated herein by reference. The VideoGames YouTube Channel's web address is http://www.youtube.com/videogames. On or about May 15,

2012, Mr. Princip represented to Mr. Moss that he had signed a company named "Machinima" to a lucrative sponsorship deal for $3.00 per every 1,000 monetized views with ads running for a YouTube channel. Mr. Princip represented to Mr. Moss that he needed $1,500.00 to start the VideoGames YouTube channel, and assured Mr. Moss that he would profit greatly from his investment. Mr. Moss agreed to enter into the Partnership Agreement with Mr. Princip, and invested the $1,500.00 into VideoGames.

16.     The Partnership Agreement provided that Mr. Moss and Mr. Princip wish to become legal partners in business, and that the partnership will be governed under the laws of the State of Texas. App. 6. The Partnership Agreement provided that Mr. Moss would invest $1,500.00 into the VideoGames channel, in return for thirty percent (30%) ownership of the company, and that Mr. Moss would "make 30% off everything revolving around our brand, channel revenue, app revenue, etc." App. 6. The Partnership Agreement provided that "David Tyler Moss is an advisor to the company, and has equal say into every decision we make." App. 6.

17.     The Partnership Agreement also provided that Mr. Princip would return Plaintiff Mr. Moss' initial investment within sixty (60) days of signing the Agreement, that Mr. Moss would be able to log into VideoGames at any time that he pleased, and that Mr. Moss would earn thirty percent (30%) of the channel revenue, paid out every 15th day of the month. App. 6.

18.     Finally, the Partnership Agreement provided that, "The Partnership's primary purpose is Ensure [sic] that David Tyler Moss earns 30% of what the channel earns, and anything associated with the 'VideoGames' brand." App. 6.

19.     On or about May 26, 2012, Mr. Princip admitted to Mr. Moss that the VideoGames YouTube channel was receiving $3.00 per every 1,000 monetized views with ads running on the VideoGames YouTube Channel.

20.     Mr. Princip, after much delay and at great inconvenience to Mr. Moss, finally returned Mr. Moss' $1,500.00 initial investment.

21.     From the time that Mr. Moss and Mr. Princip entered into the Agreement, Mr. Princip and the partnership consistently failed and/or refused to make timely payments to Mr. Moss for 30% of all revenues from the VideoGames channel and its associated brand on the 15th day of each month, as set forth in the Agreement.  Despite Mr. Moss' repeated requests, and Mr. Princip's acknowledgements that he owed Mr. Moss money from the VideoGames YouTube Channel, Mr. Princip never paid Mr. Moss on time.  Mr. Moss continued to make payment demands to Mr. Princip, who continuously assured Mr. Moss that he would pay him in accordance with the Partnership Agreement, without ever following through.

22.     On or about November 19, 2012, Mr. Moss was involved in a Skype chat with Mr. Princip, and another individual named Brian Martin.  Please see Pls.' Ex. "D," App. 7-8, attached hereto and incorporated by reference herein.  Mr. Princip stated that Brian Martin (hereinafter "Mr. Martin") was his "business partner."  App. 7.  Mr. Martin stated to Mr. Moss that he was a "business partner," and that he had "experience in legal and other arenas."  App. 7. Mr. Martin advised Mr. Moss that Mr. Martin was "the official manager of VideoGames," and that Mr. Moss was "in violation of extortion" due to his repeated demands that Mr. Princip pay him as set forth in the Partnership Agreement.  App. 7.  Mr. Martin stated that he was "going to have to drop business with you and the channel VideoGames as it is ultimately the decision of

the Manager in which I am."  App. 7.  Mr. Martin further advised Mr. Moss that, "Your contract

is void."  App. 8.

23.    Mr. Princip has made a few small payments to Mr. Moss since the Partnership

Agreement was signed; no such payments in accordance with the Partnership Agreement have

been made by Mr. Princip or by the VideoGames YouTube Channel to Mr. Moss since

approximately December 1, 2012.

24.    Mr. Princip has not made a payment from the VideoGames YouTube Channel to

Mr. Keating in over one year, as of the date of filing this pleading.  Mr. Princip paid $4,000 to

Mr. Keating in January 2013, and may have made one other payment of $1,500.00 to Mr.

Keating prior to the January 2013 payment.  No payment has been made to Mr. Keating since,

despite his repeated requests, and Mr. Princip's repeated assurances that he would pay Mr.

Keating in accordance with the Membership Agreement.

25.    Mr. Princip and Mr. Martin are now controlling the VideoGames YouTube

Channel.  Mr. Princip apparently arranged for a minor child named A.L. to manage and grow the

VideoGames YouTube Channel days after Mr. Moss signed the Partnership Agreement with Mr.

Princip, without Mr. Moss' or Mr. Keating's knowledge or consent.  Mr. Princip and Mr. Martin-

-who Mr. Princip has since claimed is a 50% owner of the VideoGames YouTube Channel,

along with Mr. Princip as the other 50% owner --have subsequently initiated and settled

litigation with Adam and Abby Lovinger (the "Lovingers") (A.L.'s parents), both in California

and Virginia, without the knowledge or consent of Plaintiffs.  On or about October 25, 2013, the

Lovingers filed suit in the Superior Court of California, in and for the County of San Mateo,

Case No. 542942, alleging various causes of action, which included allegations of fraud against

8

Mr. Princip and extortion against Mr. Martin.  Mr. Princip never informed Mr. Moss and Mr. Keating about this lawsuit.

26.     On or about November 20, 2013, Mr. Princip and Mr. Martin filed suit against the Lovingers in the United States District Court for the Eastern District of Virginia, Richmond Division, Civil Action No. 3:13cv775, alleging various causes of action against A.L. from fraud to computer crimes.  Mr. Princip never informed Mr. Moss and Mr. Keating about any of this litigation during its pendency.

27.     On or about January 4, 2014, Mr. Princip and Mr. Martin entered into a Settlement Agreement and Mutual Release ("Settlement Agreement") with the Lovingers, attached as Pls.' Ex. "E," App. 9-29, and incorporated by herein by reference, to dispose of the pending litigation in both San Mateo County, California, in the United States District Court for the Eastern District of Virginia, Richmond Division.  The Settlement Agreement provides that:

> "On or before midnight on January 15, 2014 (hereinafter the "Transfer Date"), the Lovingers will transfer all interest, control, and passwords, and a copy of all operative agreements with third-parties, with regard to VideoGames, to Martin and Princip. As of the Transfer Date, the Lovingers relinquish, convey, grant and quit claim all rights, title and interest, including intellectual property rights, if any, to the YouTube Channel Videogames to Martin and Princip, as well as any right to access the YouTube Channel Video games.
>
> Notwithstanding the transfer, relinquishment, conveyance, grant, and quit claim set forth in Section 2.b., the Lovingers shall be entitled to receive and to keep, and are not required to reimburse Martin or Princip for, all revenues and income generated from VideoGames through the Transfer Date, including but not limited to revenues generated for pre-Transfer Date VideoGames views and advertisements but due to be paid post transfer. Any such revenues paid post transfer shall be paid directly to the Lovingers, and Martin and Princip will not make any demand, claim, or representation that such revenues should not be paid to the Lovingers.
>
> Martin and Princip, jointly and severally, shall, beginning on or before March 15, 2014, or as soon thereafter as sufficient net revenue is received that is generated in any manner from VideoGames after the Transfer Date, whether by advertisements or the sale or assignment of any rights related to VideoGames, pay the Lovingers a sum total of $30,000 in three (3) equal monthly installments of $10,000 each due on or before the

15th day of each month until paid in full. If any monthly payment is not timely made in the full amount of $10,000, on the grounds that sufficient net revenue has not yet been received, then Martin and Princip will pay all net revenue to the Lovingers until the Lovingers are paid in full, and the Lovingers and/or their accountant will be entitled to inspect all records relating to the net revenue from VideoGames. "Net revenue" shall be defined as gross revenue less expenses, before any payments of any kind to Martin, Princip, or any related persons or entities, and before taxes. Expenses shall include ordinary expenses according to GAAP.

App. 10-11, 21.  Mr. Martin and Mr. Princip further warranted in the Settlement

Agreement that:

"a.    Each of the Parties has the power and authority to execute and deliver this Agreement and to perform all of the respective terms, conditions and obligations set forth herein...

c.    The Parties, and each of them, whether individually or collectively, have not transferred, assigned or conveyed any claim or right being released hereunder, and has full power and authority to fully and finally release each such claim or right."

App. 12, 23.  Mr. Princip did not disclose the Settlement Agreement or any settlement

negotiations to Mr. Moss and Mr. Keating, and did not seek Mr. Moss or Mr. Keating's

permission to agree to any settlement on behalf of the VideoGames YouTube Channel--who

were entitled by their contracts to participate in these decisions.

28.    Now, the Lovingers have obtained a new judgment against Mr. Princip and Mr.

Martin in San Mateo County, California.  Mr. Princip has admitted that new legal proceedings

had commenced, and that he does not intend to pay the $30,000 settlement agreed to with A.L. in

the Settlement Agreement because "it feels wrong"  (Please see Pls.' Ex. "F," App. 30-46

attached hereto and incorporated herein by reference, at 31-34).  As a result, the Lovingers have

now obtained a judgment in excess of $40,000.00 against Defendants for breaching the

settlement that Defendants agreed to.

29.     Mr. Princip has stated in text messages that he would attempt to avoid the effect of a judgment, and sell or close the VideoGames YouTube Channel if ordered to surrender the Channel following litigation.  App. 34-37.

30.     Further, Mr. Princip and Mr. Martin have subjected the VideoGames YouTube Channel to disciplinary action by YouTube.  Mr. Princip and Mr. Martin have both embedded coding into videos on the VideoGames YouTube Channel designed to display videos on both Mr. Princip and Mr. Martin's individual YouTube channels as "related videos" when users view a video on the VideoGames YouTube Channel, in violation of YouTube's rules.  Mr. Princip and Mr. Martin have caused the VideoGames YouTube Channel to receive at least one "strike" as a direct result of this conduct; a third "strike" will result in the VideoGames YouTube Channel being deleted from the internet by YouTube.  Mr. Princip and Mr. Martin have each had at least one YouTube channel each of their own deactivated by YouTube for the same conduct.  Mr. Princip has admitted that the VideoGames YouTube Channel was nearly suspended over the strikes.  App. 35.

31.     Unless the Defendants named herein are immediately enjoined and restrained, Defendants will delete, remove, sell, or transfer the VideoGames YouTube Channel, change login credentials, including usernames and passwords, continue to liquidate assets or hide revenue and/or profits earned by the VideoGames YouTube channel which Plaintiffs David Tyler Moss and Brandon Keating are each entitled to 30% of in their respective agreements (and collectively own a 60% majority interest in the VideoGames YouTube Channel), post material derogatory in nature to Plaintiffs on the VideoGames YouTube channel or related social media, remove profitable content from the VideoGames YouTube channel to the channel's detriment, and place content on the VideoGames YouTube Channel that will subject the Channel to further

action by YouTube.  Plaintiffs have requested both injunctive relief and the appointment of a receiver during the pendency of this litigation, and both of these remedies present an imminent risk that Defendants will delete the VideoGames YouTube Channel, transfer and/or hide monies to which Plaintiffs are entitled, and continue conduct that will likely subject the VideoGames YouTube Channel to continuing liability.

## ELEMENTS FOR INJUNCTIVE RELIEF

32.    In light of the above-described facts, Plaintiffs come as partners, owners, and investors in the VideoGames YouTube Channel to seek permanent relief in the form of recovery from Defendants.  The nature of the lawsuit is Common-Law Fraud, Breach of Fiduciary Duty, Breach of Partnership Agreement, Conversion, Money Had and Received, Tortious Interference with an Existing Contract, Conspiracy, Declaratory Relief, and permanent injunctive relief.  The Affidavits of David Tyler Moss and Brandon Keating are attached hereto as Pls.' Ex. "G," App. 47-50 and Pls. Ex. "H," App. 51-56 respectively, and incorporated herein by reference.

33.    Injunctive relief is authorized by Fed. R. Civ. P. 65.  The purpose of injunctive relief is to preserve the status quo of the subject matter of the litigation until a hearing can be held on a preliminary injunction.  *Granny Goose Foods, Inc. v. Bhd. of Teamsters Auto Truck Drivers Local No. 70 of Alameda Cnty. 8212 1566*, 415 U.S. 423, 439 (1974).  The status quo is the last actual peaceable, uncontested status which preceded the pending controversy.  *LaRouche v. Kezer*, 20 F.3d 68, 74 n.7 (2nd Cir.1994).  In this case, the last actual peaceable, uncontested status preceding the controversy is that the VideoGames YouTube Channel was not deactivated in disciplinary action by YouTube for conduct in violation of YouTube rules and policy, the VideoGames YouTube Channel is generating revenue, and the VideoGames YouTube Channel

has not been removed, transferred, or deleted by Defendants.

34.    In addition, injunctive relief in this case is authorized by Tex. Civ. Prac. & Rem. §65.011(1), (2), (3), and (5), and Tex. Bus. Org. Code §152.211(b), which allows a partner to maintain an action against the partnership or another partner for or equitable relief; an injunction is a form of equitable relief in Texas law. *State v. Morales*, 869 S.W.2d 941, 947 (Tex. 1994). Finally, injunctive relief is specifically available for Conversion (see *Taiwan Shrimp Farm Vill. Ass'n v. U.S.A. Shrimp Farm Dev., Inc.*, 915 S.W.2d 61, 65 (Tex.App.—Corpus Christi 1996, writ denied)), and for Money Had and Received (see *Nowak v. Los Patios Investors, Ltd.*, 898 S.W.2d 9, 9-10 (Tex.App.—San Antonio 1995, no writ)).

35.    The Court should consider the following factors when considering an application for injunctive relief:

1.    The plaintiff must establish that he is likely to succeed on the merits;

2.    There must be a substantial threat of irreparable injury if the injunction is not granted;

3.    There must be no adequate remedy at law;

4.    The threatened injury to the plaintiff must outweigh the threatened injury to the defendant; and

5.    The granting of the preliminary injunction must not disserve the public interest.

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Evergreen Presbyterian Ministries, Inc. v. Hood*, 235 F.3d 908, 918 (5th Cir.2000).

36.    Plaintiffs are likely to succeed on the merits of this lawsuit because Plaintiffs have written agreements with Mr. Princip, and can prove each and every element of their claims, as shown by the exhibits attached in the Appendix to this Application.  Plaintiffs are both partners

in the VideoGames YouTube Channel, each Plaintiff is entitled to a 30% share of the revenues and profits, and Defendants have intentionally withheld these monies from Plaintiffs while litigating lawsuits from coast-to-coast without disclosing litigation and settlements to Plaintiffs. Mr. Princip has personally confirmed that Mr. Keating is a partner. App. 5.

Further, Mr. Princip personally approached Mr. Moss prior to suit being originally filed in Dallas County, Texas. Mr. Princip informed Mr. Moss that he had had "money that I would like to pay you." Please see Pls.' Ex. I, App. 57-66 at 57, attached hereto and incorporated by reference herein. Mr. Princip further advised that the amount of money he owed Mr. Moss was "[a] lot, and its [sic] not only that, I want to keep paying you future earnings, the channel now makes more money then [sic] you can imagine in a month." App. 57. Mr. Princip further asked Plaintiff Moss to "[l]et me do what's morally right thing and sort this out with you," and stated that the individuals running the VideoGames YouTube Channel at the time were "[m]yself, Brandon [Keating], and my friend who financed the court case." App. 58-60. Mr. Princip further confirmed that the "friend who financed the court case" is Mr. Martin. App. 59-60. Finally, Mr. Princip actually advised that Mr. Martin "told me to you reach you [sic] to you and make things right." App. 60.

In addition, Mr. Princip admittedly entered some type of revenue/profit-sharing arrangement with Defendant Brian Martin without disclosing it or obtaining approval of Plaintiffs, and clearly entered an agreement with A.L. to manage the VideoGames YouTube Channel without disclosing it or obtaining Plaintiffs' approval. Finally, Mr. Martin has clearly tortiously interfered with the contractual rights of both Plaintiffs, by working in concert with Mr. Princip to obstruct the payment of partnership revenues and profits to Plaintiffs, and has apparently converted funds from Plaintiffs for his own use.

37.    There is a substantial threat of irreparable injury if an injunction is not granted. An injury is irreparable when it cannot be undone through monetary remedies. *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 337-38 (5th Cir.1981).

A.    The harm to Plaintiffs is imminent because Defendants are in control of the VideoGames YouTube Channel (the "Channel"), which is generating revenue, and is not making distributions to the partners in the manner in which Mr. Princip, in all of his named capacities in this lawsuit, contracted to do.  Mr. Princip is apparently driving a Mercedes automobile and travelling the country (if not the world), which is evidence that he is benefitting financially from the VideoGames YouTube Channel at the expense of Plaintiffs, and hiding and/or secreting funds to the detriment of the Plaintiffs.  In addition, Defendants have posted inappropriate content on the VideoGames YouTube Channel in violation of YouTube rules or policy, and caused the VideoGames YouTube Channel to receive two strikes from YouTube as disciplinary action for inappropriate content; a third strike will result in YouTube deactivating the VideoGames YouTube Channel (App. 48-49, 54-55).  Defendants have embedded inappropriate coding into videos posted on the VideoGames YouTube Channel, and become involved in copyright or other disputes with video producers who they apparently have not paid or otherwise honored their agreements with.  Finally, Mr. Princip has stated that he will sell or close the VideoGames YouTube Channel if adversely affected by the pending litigation (App. 34-37). This action is set for trial on January 11, 2016 at 9:00 A.M.; Plaintiffs move herein as collective 60% majority interest owners in the VideoGames YouTube Channel to gain access to the login credentials for the VideoGames YouTube Channel, and have also moved to appoint a receiver for the remainder of the litigation, so that any revenues and profits generated may be held and accounted for properly pending the resolution of the case.  Mr. Princip has stated that he will

delete, remove, sell, or transfer the VideoGames YouTube Channel in such circumstances. App. 34-37.

Further, in a recent Facebook conversation with Mr. Keating, Mr. Martin admitted that he has paid money from the VideoGames YouTube Channel to Mr. Princip and to other investors, but that he will never pay Mr. Keating because he is not an owner. Please see Pls.' Ex. "J," App. 67-81 at 72, attached hereto and incorporated herein by reference. Mr. Martin went so far as to advise Mr. Keating that Mr. Martin actually gave money to Mr. Princip, in addition to "some investors...and they got their investors [sic] worth and I paid others what they were due but never ever ever [sic] will you have a part of it at all." App. 72. Mr. Martin further advised that in 2016 and 2020 he would not pay Mr. Keating any money (App. 77), and that "VG will never be yours--ever--not even 1%" (App. 79). Mr. Martin continued on to make various threats against Mr. Keating, from liquidating Mr. Keating's assets to taking his home if Mr. Keating continued in the litigation.

B.    This imminent harm will cause Plaintiffs irreparable injury in that each Plaintiff will likely lose revenues/profits/money from the partnership that they are each entitled to 30% of, and the partnership's interests will be harmed. Mr. Princip completely and apparently intentionally refused to cooperate with discovery prior to the removal of the case to this Honorable Court. As a result, Plaintiffs' damages are not presently ascertainable or easily calculated, due to Defendants' breach of fiduciary duty, fraud, breach of partnership agreement, conversion, money had and received, tortious interference with the Plaintiffs' partnership contracts, and conspiracy. Should Defendants' conduct cause a third strike from YouTube, the VideoGames YouTube Channel will be removed from YouTube at Plaintiffs' great detriment.

Further, the VideoGames YouTube Channel currently has over 2,350,000 subscribers, the

result of over two years' worth of development and marketing efforts undertaken by the VideoGames YouTube Channel. Should the VideoGames YouTube Channel receive a third and final strike--or should Defendants tamper with or remove content, or take action to sell, assign, or close the VideoGames YouTube Channel--a tremendous loss in time, effort, competitive advantage and goodwill will result, setting the venture back to start over from scratch after two years. This cannot be undone by monetary damages.

38.    There is no adequate remedy at law which will give Plaintiffs complete, final and equal relief because:

A.    Damages cannot be calculated at this time, and damages cannot be calculated in the event that the VideoGames YouTube Channel is sold, closed, removed, or deleted. The loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir.1992) (citing *Ferrero v. Assoc. Materials, Inc.*, 923 F.2d 1441, 1449 (11th Cir.1991)).

B.    By Mr. Princip's own admission, Defendants are likely to remove content from the VideoGames YouTube Channel or otherwise sell, transfer, hide, or close the VideoGames YouTube Channel;

C.    Multiple lawsuits will be necessary if Defendants should sell or transfer the VideoGames YouTube Channel, as Plaintiffs will have to sue additional entities who cannot possibly be identified at this time to obtain full and adequate relief. Please see *Wilson v. Ill. S. Ry. Co.*, 263 U.S. 574, 577, 44 S.Ct. 203, 204 (1924). In addition, Plaintiffs may be forced to initiate more litigation postjudgment in forms such as garnishment, attachment, or sequestration if they are forced to pursue Defendants' property to satisfy a judgment, such as the Mercedes automobile. Defendants have already failed and/or refused to comply with the Settlement

Agreement reached with the Lovingers to settle the California and Virginia litigation, and Defendant Marko Princip has stated that he does not intend to pay that settlement. The Lovingers have already obtained a judgment in excess of $40,000 in San Mateo County, California due to Defendants' breach of that settlement agreement;

D.    The VideoGames YouTube Channel is in danger of being removed from YouTube due to Defendants' conduct, and Plaintiffs will be forced into great expense and effort to locate any funds or assets moved by Defendant to avoid the effect of a judgment.

E.    The legal remedy of damages is only illusory if Defendants have hidden    and/or spent funds that would be used to satisfy a judgment for damages, Defendants would otherwise be unable or unwilling to pay, and Plaintiffs cannot access the VideoGames YouTube Channel because it has been sold, transferred, or deleted. A theoretical right to recover money damages will not constitute an adequate legal remedy where difficulties in the collection of any judgment render that remedy illusory. *Winston v. Gen. Drivers, Warehousemen & Helpers*, 879F.Supp. 719, 725 (W.D.Ky.1995) (citing *Peabody Coal v. UMW*, 416 F.Supp. 485 (E.D.Ill.1976)). Mr. Princip has stated that he will not pay--and even act to avoid--the effect of a judgment against the Defendants, and that he would sell or delete the VideoGames YouTube Channel in the event that he is ordered to relinquish control of the VideoGames YouTube Channel. Mr. Princip has repeatedly represented to both Plaintiffs that the VideoGames YouTube Channel is making money, AND stated his intent to pay both Plaintiffs accordingly, but never acted upon it. Further, Mr. Martin has clearly stated to Mr. Keating his intention to never pay Mr. Keating **anything**.

39.    The threatened injury to Plaintiffs outweighs the threatened injury to the Defendants. Plaintiffs, as 60% majority interest owners in possession of the VideoGames

YouTube Channel, will distribute to Defendants any funds that Defendants are rightfully entitled to. Plaintiffs will keep the books and records of the VideoGames YouTube Channel, and keep them readily available for any Defendants who are partners or who have an ownership interest. Alternatively, a receiver could maintain the books and records and preserve partnership revenues and profits until this case is resolved. Plaintiffs will eventually receive the share of profits and/or revenues that they are entitled to by contract, and the VideoGames YouTube Channel will be in no danger of any more disciplinary action by YouTube.

40.    The public interest will not be disserved or adversely affected by injunctive relief. No nonparties will be adversely affected; in fact, the purpose of promoting efficient, effective, and transparent business practices will be served. The public--as well as the VideoGames YouTube Channel's 2,500,000-plus subscribers--will be able to continue to enjoy the Channel's content.

BOND

42.    Plaintiffs are willing to post a reasonable temporary restraining order bond and request the court to set such bond, in an amount not to exceed $10,000.00

ATTORNEY'S FEES

43.    Plaintiffs request an award of reasonable and necessary attorney's fees for seeking injunctive relief to the extent allowed by law.

PERMANENT INJUNCTION

44.    Plaintiffs request that the Court enter a permanent injunction against Defendants enjoining the conduct complained of herein after trial on the merits.

REMEDY

45.    Plaintiffs have met their burden by establishing each element which must be

present before injunctive relief can be granted by this Court, and therefore Plaintiffs are entitled to the requested preliminary injunction pursuant to Fed. R. Civ. P. 65(a).

46.     Plaintiffs request that the Court enjoin Defendants from liquidating assets or hiding revenue and/or profits earned by the VideoGames YouTube channel which Plaintiffs are each entitled to 30% of (60% total), posting material derogatory in nature to Plaintiffs on the VideoGames YouTube channel or any related social media account (including but not limited to Facebook, Twitter, Instagram, etc.), posting any inappropriate content of any type on the VideoGames YouTube Channel in violation of YouTube rules or policy that could subject the Channel to a third "strike" or other disciplinary action from YouTube, breaching any current agreements made by the VideoGames YouTube Channel that could subject the Channel to liability or disciplinary action from YouTube, removing profitable content from the VideoGames YouTube Channel or any related social media account to the Channel's detriment, and from selling, transferring, closing, and deleting the VideoGames YouTube Channel or any related social media account.  Plaintiffs also request that Defendant Marko Princip and any other Defendants having knowledge be ordered to immediately disclose and turn over the log-in credentials for the VideoGames YouTube Channel and any related social media account to Plaintiffs following the issuance of a preliminary injunction or appointment of a receiver, including any usernames and passwords necessary to access the VideoGames YouTube Channel or any related social media account.  Further, Plaintiffs request that Defendant Marko Princip be committed to the custody of the United States Marshal Service following issuance of a preliminary injunction unless he immediately discloses and turns over the requested log-in credentials for the VideoGames YouTube Channel and any related social media account to Plaintiffs, and that Defendant Marko Princip remain in the custody of the United States Marshal

Service until he complies. Further, Plaintiffs request that Defendants be ordered to execute any and all necessary releases or forms with YouTube, any service provider, and any network host to allow Plaintiffs to take control of the VideoGames YouTube Channel and any related social media account and manage its business and affairs.

47.     It is essential that the Court immediately and temporarily enjoin Defendants herein, from liquidating assets or hiding revenue and/or profits earned by the VideoGames YouTube channel which Plaintiffs are each entitled to 30% of (60% total), posting any inappropriate content of any type on the VideoGames YouTube Channel in violation of YouTube rules or policy that could subject the Channel to a third "strike" or other disciplinary action from YouTube, breaching any current agreements made by the VideoGames YouTube Channel that could subject the Channel to liability or disciplinary action from YouTube, removing profitable content from the VideoGames YouTube Channel or any related social media account to the Channel's detriment, and from selling, transferring, closing, and deleting the VideoGames YouTube Channel or any related social media account. It is essential that Defendant Marko Princip and any other Defendants having knowledge be ordered to immediately disclose and turn over the log-in credentials for the VideoGames YouTube Channel and any related social media account to Plaintiffs following the issuance of a preliminary injunction, including any usernames and passwords necessary to access the VideoGames YouTube Channel and social media accounts, that Defendant Marko Princip be committed to the custody of the United States Marshal Service following issuance of a preliminary injunction unless he immediately discloses and turns over the requested log-in credentials for the VideoGames YouTube Channel and any related social media account to Plaintiffs, that Defendant Marko Princip remain in the custody of the United States Marshal Service with no contact with any person(s) other than Counsel until he

complies, and that Defendants be ordered to execute any and all necessary releases or forms with YouTube, any service provider, and any network host to allow Plaintiffs to take control of the VideoGames YouTube Channel and any related social media account and manage its business and affairs.

48.    In order to preserve the status quo during the pendency of this action, Plaintiffs request that the Court enjoin Defendants from liquidating assets or hiding revenue and/or profits earned by the VideoGames YouTube channel which Plaintiffs are each entitled to 30% of (60% total), posting material derogatory in nature to Plaintiffs on the VideoGames YouTube channel or any related social media account (including but not limited to Facebook, Twitter, Instagram, etc.), posting any inappropriate content of any type on the VideoGames YouTube Channel in violation of YouTube rules or policy that could subject the Channel to a third "strike" or other disciplinary action from YouTube, breaching any current agreements made by the VideoGames YouTube Channel that could subject the Channel to liability or disciplinary action from YouTube, removing profitable content from the VideoGames YouTube Channel or any related social media account to the Channel's detriment, and from selling, transferring, closing, and deleting the VideoGames YouTube Channel or any related social media account.  Plaintiffs also request that Defendant Marko Princip and any other Defendants having knowledge be ordered to immediately disclose and turn over the log-in credentials for the VideoGames YouTube Channel and any related social media account to Plaintiffs following the issuance of a preliminary injunction, including any usernames and passwords necessary to access the VideoGames YouTube Channel and any related social media account.  Further, Plaintiffs request that Defendant Marko Princip be committed to the custody of the United States Marshal Service following issuance of a preliminary injunction unless he immediately discloses and turns over

the requested log-in credentials for the VideoGames YouTube Channel and any related social media account to Plaintiffs, and that Defendant Marko Princip remain in the custody of the United States Marshal Service with no contact with any person(s) other than Counsel until he complies.  Further, Plaintiffs request that Defendants be ordered to execute any and all necessary releases or forms with YouTube, any service provider, and any network host to allow Plaintiffs to take control of the VideoGames YouTube Channel and any related social media account and manage its business and affairs.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, David Tyler Moss and Brandon Keating, Plaintiffs, pray that the Court will GRANT the following relief following notice to Defendants and opportunity to respond:

A.     Marko Princip and all Defendants will be cited to appear and answer herein;

B.     A preliminary injunction will issue to Marko Princip, and all Defendants named herein, enjoining Defendants, Defendants' officers, agents, servants, employees, agents, servants, successors and assigns, and attorneys from directly or indirectly liquidating assets or hiding revenue and/or profits earned by the VideoGames YouTube channel which Plaintiffs are each entitled to 30% of (60% total), posting material derogatory in nature to Plaintiffs on the VideoGames YouTube channel or any related social media account, posting any inappropriate content of any type on the VideoGames YouTube Channel in violation of YouTube rules or policy that could subject the Channel to a third "strike" or other disciplinary action from YouTube, breaching any current agreements made by the VideoGames YouTube Channel that could subject the Channel to liability or disciplinary action from YouTube, removing profitable content from the VideoGames YouTube channel or any related social media account to the

channel's detriment, and from selling, transferring, closing, and deleting the VideoGames YouTube Channel or any related social media account;

      C.     That the Court will order Defendants to immediately disclose and surrender the log-in credentials for the VideoGames YouTube Channel to Plaintiffs and any related social media account, including any usernames and passwords necessary to access the Channel, and that the Court will order Defendants to execute any and all necessary releases or forms with YouTube, any service provider, and any network host to allow Plaintiffs to immediately take control of the Channel as collective owners of 60% of the VideoGames YouTube Channel;

      D.     That the Court will enter an order of commitment to place Defendant Marko Princip in the custody of the United States Marshal Service if he does not immediately disclose and surrender log-in credentials for the VideoGames YouTube Channel and any related social media account to Plaintiffs upon issuance of a preliminary injunction, and that Defendant Marko Princip shall remain in custody of the United States Marshall Service with no contact with any person(s) other than Counsel until he discloses and surrenders the log-in credentials to Plaintiffs;

      E.     The Court sets a reasonable bond for preliminary injunction;

      F.     After notice and hearing, a preliminary injunction will issue enjoining Defendants, Defendants' officers, agents, servants, employees, successors and assigns, and attorneys from directly or indirectly liquidating assets or hiding revenue and/or profits earned by the VideoGames YouTube channel which Plaintiffs are each entitled to 30% of (60% total), posting material derogatory in nature to Plaintiffs on the VideoGames YouTube channel or any related social media account, posting any inappropriate content of any type on the VideoGames YouTube Channel in violation of YouTube rules or policy that could subject the Channel to a third "strike" or other disciplinary action from YouTube, breaching any current agreements made

by the VideoGames YouTube Channel that could subject the Channel to liability or disciplinary action from YouTube, removing profitable content from the VideoGames YouTube channel or any related social media account to the channel's detriment, and from selling, transferring, closing, and deleting the VideoGames YouTube Channel or any related social media account;

G.     That, after notice and hearing, a preliminary injunction be entered against Defendants for the duration of this litigation;

H.     That Plaintiffs be awarded a judgment for all costs incurred in obtaining the requested preliminary injunction, to the extent allowed by law, and attorney's fees as requested herein; and

I.     For such other and further relief, in law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

WYDE & ASSOCIATES

By: s/ *Dan L. Wyde*
Dan L. Wyde
Texas Bar No. 22095500
Hunter A. Nunn
Texas Bar No. 24083587
Read H. Reily
Texas Bar No. 24080126
Email: wydelaw@gmail.com
10100 North Central Expressway, Suite 590
Dallas, Texas 75231
Tel. (214) 521-9100
Fax. (214) 521-9130
Attorneys for Plaintiffs
David Tyler Moss and Brandon Keating

<u>CERTIFICATE OF CONFERENCE</u>

A conference was not held prior to filing this Motion.  Plaintiffs' counsel called the office of Defendants' counsel during the afternoon of Friday, April 10, 2015.  Defendants' counsel was not available, and Plaintiffs' counsel left a message regarding this Motion.  Defendants' counsel returned the call to the office of Plaintiffs' counsel on Monday, April 13, 2015, and left a message indicating that Defendants' counsel was opposed to the Motion.

Certified to the Day of April 13, 2015 by

s/ *Hunter A. Nunn*
Hunter A. Nunn
Attorney for Plaintiffs


<u>CERTIFICATE OF SERVICE</u>

On April 13, 2015 I electronically submitted the above and foregoing Plaintiffs' Motion for Preliminary Injunction and Brief in Support with the clerk of Court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).


s/ *Hunter A. Nunn*
Hunter A. Nunn
Attorney for Plaintiffs
Server