# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **DAVID TYLER MOSS et al.** | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| *v.* | § | **Civil Action No. 3:14-cv-03088-M** |
| | § | |
| **MARKO PRINCIP** *et al.*, | § | |
| | § | |
| *Defendants.* | § | |

**DEFENDANTS' PROVISIONAL RESPONSE TO PLAINTIFFS' MOTION FOR ENTRY OF JUDGMENT AND/OR REQUEST FOR INJUNCTIVE RELIEF**

FRIEDMAN & FEIGER, LLP
Mazin A. Sbaiti, Esq.
State Bar No. 24058096
Mazin@FFLawOffice.com
Eric Friedman, Esq.
State Bar No. 24090106
EFriedman@FFLawOffice.com
5301 Spring Valley Road
Suite 200
Dallas, Texas 75254
T: (972) 788-1400
F: (972) 788-2667

*COUNSEL FOR DEFENDANTS*

# I.

## SUMMARY OF DEFENDANTS' POSITION

The core story of this case is that two Plaintiffs each claimed they invested $1,500 into Defendants' YouTube business partnership directly and through an LLC.[1] The Partnership sought to make revenues from a gaming channel where visitors to YouTube watch other people's recorded video game adventures (the "YouTube Channel"). Each Plaintiff claimed he bought 30% of the Partnership and is thus a partner with the Defendants. After trial, the jury awarded the Plaintiffs in excess of $20 million in actual and exemplary damages for fraud.

Plaintiffs now seek to get the judgment entered by this Court and to issue what amounts to a writ of execution, permanently depriving Defendants of their rights and income – all before newly retained counsel has even had the chance to review the trial transcript and trial exhibits. Undersigned has access only to the Trial Notebooks exchanged by the parties, but not to any actual admitted exhibits or trial transcripts. Accordingly, Defendants ask this Court to abate entering judgment, or at least stay its enforcement (and deny the injunction) under Rule 62(b) while Defendants have a complete and full opportunity to review the record and brief for the Court their appropriate motions challenging the verdict. It would be patently unfair otherwise.

Just from the Trial Notebooks and Verdict Form, there are serious questions as to the propriety of the award. The jury awarded over $20 million on a four-year $3,000 investment that Plaintiffs claimed they were defrauded out of. The shocking disparity—six thousand times—between the documented losses and the total award is but the *first* in a line of infirmities

---

[1] Defendants will be filing a Rule 12(b)(1) motion to dismiss, there is substantial doubt that this Court has subject matter jurisdiction. Under the law, general partnerships and LLCs are deemed to be citizens of each state in which their partners or members reside. Per the allegations in the Petition and First Amended Complaint, Defendant VideoGames YouTube is a partnership, and Plaintiff Moss claims to be a partner in VideoGames Youtube; thus they are citizens of the same state; the same goes for Plaintiff Keating and his claimed membership interest in Defendant Game Guide LLC. Plaintiffs raised no federal claims.

Therefore, Plaintiffs' motion is moot, all of this Court's orders are void, and the jury verdict is unenforceable and invalid. We file this Response in compliance with the Court's order, but we believe this Court lacks jurisdiction.

underlying the awards. Others include the apparent lack of any evidence whatsoever of the Partnership's earnings, or an expert's opinion from which any reasonable jury could have calculated past or future damages; not to mention the fact that none of Plaintiffs' claims—breach of contract, fiduciary duty, or fraud—even contemplates future damages because the entire allegations point to only *prior deprivations of the benefit of their bargain*.

Additionally, there are several grounds for denying the provisional injunctive relief Plaintiffs seek. Most importantly, Plaintiffs have not demonstrated that the Partnership owns the YouTube Channel. Indeed, the only documents in the proposed Exhibits demonstrate conclusively that (i) Marko Princip individually owned the YouTube Channel rights (hence Defendants' injunction); and (ii) none of the operative documents creating the Partnership mentions or transfers Mr. Princip's ownership of the YouTube Channel to any other person, nor to the Partnership.  Therefore, simply ousting Defendants does not *ipso facto* result in Plaintiffs' right to own the YouTube Channel as the only remaining partners. Moreover, Plaintiffs fail to satisfy *any* of the formal requirements for provisional injunctive relief. To the extent they seek relief to stave off feared sabotage by the Defendants, any such fears are unfounded, and their requested injunction is much too broad and blunt in light of such a fear. Therefore, Plaintiffs are simply not entitled to the injunctive relief prayed for in their motion.

What Plaintiffs' motion really is, is an attempt to jump the gun and put justice so far out of reach of the Defendants that they hope the Defendants might just give up. Indeed, Plaintiffs are seeking to use an injunction to effectuate a *seizure* of the YouTube Channel. But they have not argued why they are entitled to seize the Channel, and they do not even attempt to satisfy the requisites of Rule 69, nor any of the State law remedies incorporated therein.

Granting Plaintiffs the YouTube Channel would be a devastating mistake. For one thing, Plaintiffs have submitted no evidence that they know how to run the YouTube Channel, much less operate it successfully. Thus, transferring the YouTube Channel to them may very well usher in the demise the motion for provisional injunction claims to avoid.

Transferring the Channel would likewise be highly prejudicial to Defendants as it is their primary source of income—and robbing them of that would be patently unfair. This is especially so given the lack of evidence supporting the verdict. It would thus be highly inequitable to effectively—and potentially irreversibly—enforce the judgment before Defendants have had the opportunity to obtain and review the trial transcripts and exhibits, and before they have had sufficient time to properly brief for the Court the specific bases and grounds for their motions challenging the verdict.

Accordingly, Plaintiffs respectfully request that this Court deny injunctive relief, and stay entering judgment (or its enforcement) until Defendants have had sufficient opportunity to properly brief for the Court the specific bases and grounds for challenging the verdict.

## II.

### THIS COURT SHOULD NOT ENTER JUDGMENT,
### OR ELSE STAY ENFORCMEENT OF ANY JUDGMENT

**A. Defendants Do Not Yet Have Access to the Trial Transcripts or Exhibits – Thus, the Motion Puts Defendants to an Impossible Task**

Defendants Undersigned counsel is newly admitted to the case and was not present at trial. Defendants currently only have access to [incomplete] copies of trial exhibit notebooks, they do not have access to the trial transcripts, nor to the list of admitted exhibits or copies thereof.

Yet, Plaintiffs have put Defendants to the task of responding to a motion for provisional injunction that is predicated on the goings-on at trial, the evidence submitted, all the while

characterizing the jury's findings for the purposes of ouster and seizure of property. Moreover, as we discuss below, the issue of ouster does not automatically flow into Plaintiffs' right to own and control the YouTube Channel – the latter raises questions of fact and evidence that again rely on trial exhibits or potential non-submitted extraneous evidence.

This scenario justifies abating entry of judgment. For example, *U.S. v. Broadus*, (albeit in a criminal action) new counsel was retained post-verdict to represent the defendant. *See* 664 F. Supp. 592, 593 (D.C. Dist. 1987). The court noted that it was "clear to the Court that it would require the transcript to in order to consider" post-verdict motions for judgment "properly." *Id.* The district court allowed sufficient time for new counsel "to order and review the trial transcript before taking any other action" on her client's behalf. *Id.* Similarly, in *Troche v. United States*, the district court noted that "neither the court nor [petitioner] has the benefit of a trial transcript in which to adequately examine the allegations" raised in the post-verdict motions. 1985 U.S. Dist. LEXIS 18236, *7 (E.D. Penn., July 1, 1985). The Court thus denied those motions.

Here, the Parties do not have the trial record before them, if they are to file a flurry of motions predicated on the facts submitted to the jury as grounds for entering or enforcing the judgment, everyone needs the benefit of the trial transcripts and trial exhibits.

**B.  The Verdict Appears Infirm and is Open to Challenge**

The foregoing notwithstanding, undersigned's review of the Pleadings, the Trial Exhibit Notebooks provided by prior Defense Counsel, as well as the Court's Charge to the Jury, immediately raises substantial questions as to the propriety of the damages awards—both their legal and constittuional propriety and evidentiary basis. We set forth the tenor of the challenges Defendants would seek to raise solely for the purpose of demonstrating to the Court the seriousness and meritoriousness of the challenges, which should not be swept aside.

1.  **There are Serious Constitutional Questions of Due Process with Regards to the Jury's Award of Exemplary or Punitive Damages**

Again, the jury awarded $20 million on a four-year, $3,000 investment that Plaintiffs claimed they were defrauded out of—i.e., more than *six-thousand times the demonstrated economic loss.*[2] This is out of any rational proportion to the alleged wrong-doing.

The U.S. Supreme Court has held that there are limitations under the 8th and 14th Amendment to what a jury can award in punitive or exemplary damages. *See BMW of N. Am. v. Gore*, 517 U.S. 559, 581 n.35 (1996). In *BMW v. Gore*, the Supreme Court held that due process requires a reasonable relationship between the punitive damages award, and the severity of the misconduct. *Id.* The Supreme Court found that punitive damages of $2 million, which was 35 times the actual damages of the 14 plaintiffs, was wildly excessive, especially in comparison to the 10 to 1 ratio that the Court held was at the upper limit of reasonableness in *TXO Prod. Corp. v. All. Res. Corp.*, 509 U.S. 443, 460 (1993). *See also Rubinstein v. Administrators of the Tulane Educ. Fund*, 218 F.3d 392, 408-09 (5th Cir. 2000) (remitting punitive damage award of $100,000 [30 to 1] to $25,000 [10 to 1]).

Therefore, given Plaintiffs' admitted $3,000 lost investment value, Plaintiffs *at most* would have been entitled to $30,000 in exemplary damages for fraud.

While the ratio of punitive to actual damages is not the only factor to consider—others include the severity of the misconduct, the need to deter future conduct, the wealth of the defendant, and the forseeabilty of such a high award—there appears to be no rational relationship

---

[2] The documented investments (if we accept the allegations as true) were for $1,500 each. It is these investments that Plaintiffs respectively claim they were fraudulently deprived of. Thus, this is the more appropriate baseline. But even taking the jury's award of *contract* damages as the baseline, $700,000, as reflecting the putative loss suffered under the benefit-of-the-bargain measure, the jury's total award is still *thirty* times that amount. "While there is no magical multiplier, a multiplier of thirty is unreasonable on the facts of this case." *Rubinstein,* 218 F.3d at 408. Plaintiffs will certainly try to cut this in half by adding the prospective damages amount. But that would not comport with applicable law, which measures the reasonableness of punitive damages against *past* damages only. *Id.* ("we must consider the appropriateness of the amount at issue here with reference *only to the compensatory damages awarded for the prior harm*") (emphasis added).

between the evidence of these factors in the available record (limited to the proposed exhibits) and Plaintiffs' award.

While Defendants do not ask the Court to pass on this issue today, the fact that such a question exists so squarely and plainly is ample basis for this Court to delay entering judgment for the Plaintiffs, or disallowing its enforcement before Defendants can fully digest the record and brief the issues for the Court.

### 2. There Are Serious Questions of Evidence Sufficiency Regarding Contract Damages That Defendants Need Access to the Entire Trial Record Before Completely Addressing

The jury's finding that Plaintiffs were owed some $700,000 in past contract damages for their putative 60% combined interests does not appear to be supported by any documentary evidence or any other factual evidence.

Logically, any past damages would be the result of a simple equation:

**Past Earnings x 60% = Plaintiffs' Past Damages**

But from what little of the documentary and trial record we have at this juncture, it is barren of any evidence of how much the Partnership supposedly earned in 2012, 2013, 2014, and 2015.  Other than Mr. Princip's 2012 personal tax return, there were no bank records, accounting statements, or other evidence submitted for any years to show what the business earned. Even assuming that 100% of the earnings in the 2012 tax statement reflect the gross earnings of the YouTube Channel, there apparently were no tax returns submitted for the latter years.  Nor is there is evidence of any expert report under Rule 26 contemplated, offered or submitted to extrapolate the proper measure of losses if those were to be calculated in any fashion other than by simply multiplying past earnings by the percentage interest.

Thus, there currently appears to be no evidentiary basis for the jury to have concluded that the YouTube Channel earned $1.16 million between 2012 and 2015 in order to have awarded the putative 60% partners [e.g., Plaintiffs] over $700,000 in past damages. This is grounds for setting the verdict aside. *See Holland v. Lovelace*, 352 S.W.3d 777, 794 (Tex. App. 2011) (reversing jury award of damages because while "the jury was free to accept or reject all or any portion of the testimony of any expert it did not find to be credible…The jury could not, however, arbitrarily assess an amount that was not authorized or supported by the evidence presented at trial"); *Peterson v. Kroschel*, No. 01-13-00554-CV, 2015 Tex. App. LEXIS 5543, at *13-14 (App. June 2, 2015) (overturning jury verdict on past damages on breach of contract because "there is no evidence—much less a range of evidence—establishing '[t]he amount of profits from the operation of Angleton Sand that rightfully belong to [Peterson] that were retained by [Kroschel].'").

It is not enough that the numbers were extrapolated by Plaintiffs' counsel and written on the white board for them during closing argument—that too bears reversal. *Accord Rodgers v. Fisher Body Div., G.M.C.*, 739 F.2d 1102, 1107 (6th Cir. 1984) (vacating award of lost wages and future wages and fringe benefits where plaintiff's counsel computed possible damages on blackboard during closing argument to jury without having developed rational basis for figures during trial), *cert. denied,* 470 U.S. 1054 (1985).

No court may uphold a jury verdict where it is clear that the verdict is the result of sheer speculation. *See Anthony v. Chevron United States*, 284 F.3d 578, 583 (5th Cir. 2002) ("the evidence must be sufficient so that a jury will not ultimately rest its verdict on mere speculation and conjecture")*; Liberty Mut. Fire Ins. Co. v. Scott*, 486 F.3d 418, 422 (8th Cir. 2007) (judgment

as a matter of law should be granted if the record contains no competent evidence or proof beyond speculation to support the verdict).

Furthermore, the award of future or "royalty" damages is likewise unsupported by any evidence in the record, and is plainly the result of manifest legal error. There was no evidence on which to calculate the possible future damages, and no expert to give a competent opinion that extrapolated future earnings. *Accord First State Bank v. Keilman*, 851 S.W.2d 914, 930 (Tex. App. 1993) ("a jury may not "pull figures out of a hat"; a rational basis for calculation must exist"); *Perry v. Texas Municipal Power Agency*, 667 S.W.2d 259, 264 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.) (lack of expert testimony to testify to the value of business justified trial court's rendering of judgment for defendant).

Further, there are *zero* legal grounds for awarding *future* damages under any of the legal theories brought to the Court and submitted to the jury. For one thing, the award of future damages is in conflict with Plaintiffs' continued ownership interests in the Partnership. Whatever "lost" earnings future damages are supposed to compensate have not occurred—and if there is a threat of them occurring, then the proper remedy would *at best* be injunctive relief, not damages. Any such future earnings that Plaintiffs are entitled to from the Partnership would ripen upon receipt of those earnings by the Partnership. *Compare Floating Bulk Terminal v. Coal Logistics Corp.,* Nos. 14-01-00055-CV, 2002 Tex. App. LEXIS 5529, at *11-12 (App. July 25, 2002) (awarding future damages where plaintiff deprived of ownership of ship in violation of joint venture agreement). It simply makes no rational sense to award a liquidated amount of damages to Plaintiffs for lost payments that have yet to occur. Even if they were to contend that the reinvestment of the deprived funds accumulated into a larger interest, they would have to have had expert testimony to explain this chain of causation, as such complex interactions are outside

the regular competency of jurors to infer on their own. *Accord Perry*, 667 S.W.2d at 264; *Keilman*, 851 S.W.2d at 930.

Therefore, there appears to be *no* documentary evidence to support the economic damages awards and the verdict can rightly be attacked and a new trial ordered. *Accord Poullard v. Turner*, 298 F.3d 421, 424 (5th Cir. 2002) ("when a new trial is granted on compensatory damages, it must at the same time be granted on the issue of punitive damages") (citations omitted); *Estrada v. Dillon*, 44 S.W.3d 558, 562 (Tex. 2001) (per curiam) (where liability is contested, court of appeals may not order a separate trial solely on damages).

Again, the Court need not pass on these issues today. Defendants point them out for the primary purpose of demonstrating to the Court that serious questions arise in the rendering of this surprising verdict which justifies delaying the entry of judgment or staying its enforcement.

## C. Courts Routinely Abate Entering Judgment or Stay the Enforcement of Judgment Pending Post-Trial Motions

Rule 62(b) properly authorizes the Court to stay entry and/or enforcement of a judgment pending presentation and/or decision on a party's motion under Federal Rules 50, 52(b), 59 and 60. *See* Fed. R. Civ. P. 62(b). Whether to enter the judgment or stay its enforcement is discretionary. *See* Wright & Miller, 11 Fed. Prac. & Proc. Civ. § 2903 (3d ed.). The Fifth Circuit has set forth four factors a court may consider in determining if it should stay relief pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Moore v. Tangipahoa Parish Sch. Bd.*, 2013 U.S. App. LEXIS 877, at *2 (5th Cir. Jan. 14, 2013) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S. Ct. 2113, 95 L. Ed. 2d 724 (1987)).

Here, Defendants have demonstrated that (1) they raise highly meritorious questions regarding the validity of the verdict and damages award; (2) that Defendants would be irreparably harmed if Plaintiffs are permitted to commandeer and seize the YouTube Channel; (3) there are no other parties interested in the proceeding who would be injured by a stay; and (4) the public interest values proper jury verdicts and not executing judgments that are so out of proportion as to shock the judicial conscience.

This Court can and should follow those courts that have abated entering judgment, or stayed its enforcement pending post-trial motion practice. *See, e.g., Penn Mut. Life Ins. Co. v. Stewart*, 2015 U.S. Dist. LEXIS 135188, at *18 (S.D. Tex. Oct. 2, 2015) (granting stay pending the outcome of Rule 50 motion for judgment as a matter of law and Rule 59 motion for a new trial); *Aunt Sally's Praline Shop, Inc. v. United Fire & Cas. Co.,* No. 06-7674, 2008 U.S. Dist. LEXIS 90619, at *1-2 (E.D. La. Oct. 29, 2008) (same); *AIA Eng'g Ltd. v. Magotteaux Int'l S/A*, 2012 U.S. Dist. LEXIS 122345, 2012 WL 3745625, at *1 (M.D. Tenn., Aug. 28, 2012) (same); *SEC v. Retail Pro, Inc*., 2011 U.S. Dist. LEXIS 89324, 2011 WL 3515910, at *2 (S.D. Cal. Aug. 11, 2011) (same).

Accordingly, this Court should delay enter judgment, or stay its enforcement too.

## III.

## <u>THIS COURT SHOULD DENY THE INJUNCTIVE RELIEF</u>

**A.  <u>Plaintiffs Have Not Demonstrated Entitlement to the Injunctive Relief they Seek</u>**

**1.  Plaintiffs' Motion for Expulsion is Needless Because No One Intends (or Has Intended for a While) to Maintain the Partnership**

Plaintiffs' principal requested relief to expel Princip and Martin is pointless. They have evinced no intent to remain in a partnership with either, much less both, Defendants. A common law partnership is dissolved upon the expression of intent of the partners to no longer be

partners. *See, e.g.,* Texas Business Organizations Code ("TBOC") § 152.501(b). To put it simply, a judicial decree that the partnership is dissolved is simply not necessary as there seems to be no dispute here that these parties do not wish to be partners anymore. *Id.* Thus, that portion of the injunction would be appear to lack a genuine Article III dispute.

Much like a husband and wife after a divorce where each leaves the marriage with their separate property intact, after this business divorce each party leaves with its separate property. In this case, the property is the YouTube Channel which belongs to Marko Princip individually.

### 2. Plaintiffs Have Not Established that the YouTube Channel is Partnership Property—Thus, Even if this Court Finds Grounds to Oust Defendants, That is Insufficient Grounds to Hand Plaintiffs the Keys to the YouTube Channel

The Partnership has no property that needs dividing other than, perhaps, cash earned under the Partnership. Plaintiffs' position appears to follow this line of argument: (i) the "partnership" *owns* the YouTube Channel as partnership property; (ii) the Defendants should be judicially ousted from the partnership; and (iii) that upon Defendants' ouster, Plaintiffs' become the sole owners of the partnership, and therefore, by operation of law, have sole entitlement to possession and control of the YouTube Channel.

While understandably convenient and appealing to the Plaintiffs, their logic is incorrect.

As to the YouTube Channel itself, Plaintiffs have not established any entitlement to its possession and control. Even if they had demonstrated that Defendants should be judicially ousted— which they decidedly have not—that alone is insufficient grounds to simply hand Plaintiffs the keys to the YouTube Channel.

A bedrock principle of partnership law is that *the partnership* and *its partners* are not one in the same. "A partnership is an entity *distinct* from its partners." Tex. Bus. Orgs. Code § 152.056 ("PARTNERSHIP AS AN ENTITY") (emphasis added).

And the Dallas Court of Appeals has explained, "[t]he *mere* fact property is used for partnership purposes is *not* evidence that it is partnership property." *Chapman Custom Homes Custom Homes, Inc. v. Dall. Plumbing Co.*, 446 S.W.3d 29, 34 (Tex. App.—Dallas 2013) (emphasis added), *over'd on other grounds*, 445 S.W.3d 716 (Tex. 2014).[3] On the contrary, "such property is *presumed* to be the property of the partner that purchased the property." *Id*. This principle is codified in the business organizations code, which provides in relevant part:

> ***Property acquired in the name of one or more partners is presumed to be the <u>partner's</u> property***, *regardless of whether the property is used for partnership purposes*, if the instrument transferring title to the property does not indicate the person's capacity as a partner or the existence of a partnership, and if the property is not acquired with partnership property.

Tex. Bus. Org. Code § 152.102(c) (emphasis added).

Thus, Plaintiffs' implicit assumption that property used for a partnership's purposes is necessarily "partnership property" is incorrect as a matter of law.

Rather, "property acquired in the name of one or more partners [that] is not acquired with partnership property … is presumed to be the property of the partner, *even if the property is used for partnership purposes*." *Chapman Custom Homes Custom Homes*, 446 S.W.3d at 34 (emphasis added). Indeed, the Dallas Court of Appeals noted that property that belongs to one partner may still be used for the benefit of a partnership, but that as soon as the partnership dissolves, the property reverts to being that partner's sole property. *Id.* at 33-34. Therefore, Plaintiffs cannot rest on the assumption that simply because the YouTube Channel was used for the purposes of the partnership, it was therefore property of the partnership.

Here, the only documents in the record show that the property—the YouTube Channel and related assets—were: (i) acquired in the name of Marko Princip without reference to *any*

---

[3] In *Chapman* the Supreme Court of Texas overruled the court of appeals regarding issues of the defendant's alleged negligence and the proper standard as to its duty of care; the lower court's holdings cited here were not at issue or addressed in the Supreme Court's review.

partnership; and (ii) acquired *prior* to either Plaintiff's association with either Defendant. *See* Defense Trial Exhibit 1 ("TE") and FAC Exhibits A and C.[4] Furthermore, this question was not submitted to the jury—Plaintiffs never requested an instruction or finding as to whether the Channel was partnership property or not.

Finally, Plaintiffs have cited no authority for the proposition that once Marko Princip is ousted from the Partnership, that suddenly his ownership of the YouTube Channel ceases, or that he is obligated to donate the channel to the partnership. No such authority exists. To the contrary, a recent case from the Southern District—*Derrick Petroleum Servs. v. PLS, Inc*—is instructive, as its circumstances are nearly identical to the issue here. No. H:14-cv-1520, U.S. Dist. LEXIS 178639 (S.D. Tex. Dec. 31, 2014).

There, the relevant property was a database of oil and gas mergers and acquisitions information that had been used by a business partnership that was now in dissolution. The issue before the Court was that the plaintiff "asserts that it has a 50 percent ownership interest in the [database]" by virtue of its 50% ownership in the partnership. *Id.* at *3. Citing § 152.102(c), Judge Rosenthal held that the defendant "owned the Database *before* the MOU [memorandum of understanding] and is [thus] *presumed to remain the owner.*" *Id.* at *47 (emphasis added).

The Court found that the Plaintiff would not be entitled to any ownership of the database upon dissolution of the partnership—nor could plaintiff claim joint-tenancy in the property—because the documents ostensibly creating the partnership did not transfer ownership of the database, or any rights in it, to the plaintiffs or to the putative partnership. *Id.* at *14-15. The Court also found that the exclusive control that the defendant maintained over the database

---

[4] These references are to the Exhibit Notebooks given to us, not to actual trial exhibits which we do not have at this time. The documents attached to Defendants motion reflect the registration of the YouTube Channel and other rights, and specifically show that they are in Defendants' personal names without reference to the partnership or status as a partner. They also reflect dates prior to the formation of the Partnerships alleged in the complaint, and thus, could not have been obtained with "partnership funds."

evinced his intent not to donate it to the partnership or transfer ownership rights to the plaintiffs. *Id*. at \*21 and \*29 ("[plaintiff] provided the parties' business use of the database, but maintained sole possession and control over [it]…which [is] consistent with its continued sole ownership of the database.").

So too here. Marko Princip created and owned the rights to the YouTube Channel by himself *before* entering or even contemplating any partnership with the other parties in this case.[5] He also maintained sole control over it–evidence of which is offered principally by Plaintiffs' own motion papers. So, not only is Plaintiffs' motion squarely contravened by relevant precedent, their request itself also further demonstrates that the YouTube Channel is the separate property of Princip, *not* the partnership's. In Plaintiff's own words: "[t]he Defendants are in *sole possession* of the username and password to the VideoGame Channel … [and] Defendants have unfettered control of the content appearing on [the] Channel."[6] "Under Texas law, '[o]ne in possession (or control) of property is presumed to be the owner of it.'" *In re Rollings*, 451 Fed. App'x 340, 346 (5th Cir. 2011) (quoting *Smith v. Briggs*, 168 S.W.2d 528, 531 (Tex. App.—San Antonio 1943, writ ref'd w.o.m.)).

If any doubts remain, the admission that Plaintiffs do not have—and *never* have had—the right to control the YouTube Channel ends the inquiry. "At the time this suit was filed … the property was in possession of [Defendants], *which fact alone* gives rise to the inference that [they] had the legal right to such possession." *Worth Tool & Die Co. v. Atlantis Electronics Corp.*, 398 S.W.2d 656, 657 (Tex. App.—Dallas 1965, writ dism'd by agr.). The fact that Princip used the YouTube Channel *for* the partnership changes nothing; rather, his using it on behalf of the partnership *while maintaining exclusive control* of the property (through logins, username,

---

[5] *See* Principal Decl., sworn to April 13, 2016.
 [6] Doc. #68 at ¶ 23.

etc.) shows to a certainty that the Channel was treated as *his* separate property that *he* used to benefit the partnership. *Id. See also Hickey v. Couchman*, 797 S.W.2d 103, 110 (Tex. App.—Corpus Christi 1990, writ denied).

Therefore, Plaintiffs' fundamental premise is an incorrect one. Simply ousting Defendants from the partnership does not automatically give them the right to the YouTube Channel and related assets, and they have shown nothing beyond their misapprehension of the law of partnerships that might entitle them to such possession.

On these points, Plaintiffs' motion should be overruled.

### 3. Plaintiffs' Efforts to Seize the YouTube Channel Without Going Through the Proper Procedural Mechanisms Should be Rejected

Plaintiffs have it all wrong when they seek injunctive relief instead of post-judgment remedies available at law. Even if Messrs. Princip and Martin should be ousted from the partnership, "[p]roperty owned by one member of a business relationship *before* the business was created *is presumed to remain the property of **_that_ _individual_ _member_**" after the partnership is dissolved. *See Derrick Petroleum Servs.*, U.S. Dist. LEXIS 178639 at *46 (emphasis added). Therefore, Plaintiffs have not demonstrated entitlement of the Partnership to take the YouTube Channel; the only option Plaintiffs have for taking the property is *seizure*.

However, seizure is not accomplished through injunction. For one thing, the purpose of an injunction is generally to maintain the status quo or otherwise return the status quo – neither is sought in Plaintiffs' motion. *Accord Prewitt v. Miss. State Univ.*, No. 1:06CV338-LG-DAS, 2012 U.S. Dist. LEXIS 73859, at *3 (N.D. Miss. May 29, 2012) (denying injunction because injunction "would do nothing to preserve the status quo.").

the right to seize property is governed by Rule 69(a), which incorporates Texas Civil Practice and Remedies Code § 34.001 *et seq*. None of the features of this law have been raised or

proposed, nor followed. For example, the property must be seized and then *sold*—Plaintiffs may not simply "take it" via an injunction. *Id.* at § 34.041.

## B.  Plaintiffs Have Not Demonstrated Any Urgency for Injunctive Relief to be Entered Prior to Resolution of Post-Trial Motions

### 1.  Plaintiffs' New Found Urgency is Unsubstantiated

Plaintiffs' surprising urgency is unfounded. Despite the fact that this case has pending for well over a year, they abandoned their request for preliminary injunctive relief filed over a year ago wherein they raised the same parade of horribles which still have not come to pass. *See* Doc.# _. Further, they never revived their motion for preliminary injunction. That fact alone undermines their claim that they need relief immediately. *Accord Romag Fasteners Inc. v. Fossil, Inc.*, 29 F. Supp. 3d 85, 100 (D. Conn. 2014) (denying preliminary injunctive relief because delay undermines inference of imminent irreparable harm).

### 2.  Plaintiffs Have Not Put Forth Any Evidence That the YouTube Channel Will Simply Go Away or Otherwise Disappear

Plaintiffs gloss over the fact that the YouTube Channel is hosted and maintained on YouTube. *See* TE # __ (Google Contract). There is no evidence that Defendants could hide it, move it, change it, or otherwise transfer it in a way that would put it out of reach of a writ after the post-trial motions are heard and decided.

Plaintiffs have not demonstrated that even if the partnership were to take *no* actions to sustain the YouTube Channel, the YouTube Channel would simply disappear as would the other related assets. *Id*. Thus, this is not a case where there are potential assets that can spirited away or are otherwise evanescent, which might justify the requested relief in such an urgent fashion.

The only ill Plaintiffs lay out is that Defendants will take some action to actively harm or destroy the YouTube Channel. These fears are speculative at best. The Channel is in "Good

Standing as of the filing of this Brief.[7] Moreover, the evidence will show that Defendants actually *retrieved* the Channel when it was hacked by one Lovinger.[8] The Court has already addressed the outburst by Mr. Martin in response to Plaintiffs' online celebration. While this is cited as a concrete threat, it is the *only* threat and Mr. Martin has already been made aware of the potential consequences to him and he has committed to the Court that he did not mean them.

Thus, Plaintiffs have no real grounds for taking the YouTube Channel via injunction or otherwise.

## C.  Plaintiffs' Proposed Injunction is Overbroad

It is well established that injunctions may not be broader than the ill they intend to remedy. *See Doe v. Veneman*, 380 F.3d 807, 818 (5th Cir. 2004) ("The district court must narrowly tailor an injunction to remedy the specific action which gives rise to the order."). *See also* 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948.1, p. 139-145 (2d ed. 1995) (same; collecting cases).

Here, Plaintiffs have not identified the justification for transferring the YouTube Channel. Plaintiffs' fear of sabotage does not justify transfer of the YouTube Channel. To the extent that Plaintiffs are concerned that Defendants will somehow ruin or sabotage the YouTube Channel, their requested injunctive relief is simply not the solution.

There are two simple, common sense reasons for this:

*First*, if Plaintiffs' merely fear sabotage of the YouTube Channel, they could have simply requested an interim injunction prohibiting deleterious actions on the part of Defendants. They did not ask for that remedy. The remedy they requested is far broader, onerous and punitive.

---

[7] *See* Decl. of Marko Princip, sworn to April 13, 2016.
[8] While there are documents in Plaintiffs Trial Exhibits – T.E. 60-62 proving this, we do not know whether those were ultimately admitted.

***Second***, transferring the YouTube Channel will not necessarily put it in better hands. Plaintiffs' trial testimony admitted that up until now, they have been passive putative partners. They have no track record or other demonstrable experience such that they would be better, or even equivalent, stewards of the YouTube Channel. Therefore, the injunction itself may actually cause the very harm it is intended to avoid.

Moreover, if Plaintiffs are concerned about their judgment being satisfied, their injunction is likewise too broad. An injunction requiring that 30% of proceeds be placed into the Court's registry on behalf of Mr. Keating, and 30% on behalf of Mr. Moss, would be the more prudent and proper mechanism.

Therefore, the requested injunction should be denied on the grounds that it is overbroad.

## D.  **The Balance of Hardships Favors Denying Injunctive Relief**

Here, Plaintiffs have identified no *actual* prejudice to denying the injunction. On the other hand, Defendants would suffer palpable prejudice:

- Plaintiffs have no demonstrated experience running the YouTube Channel, and could actually cause its failure or demise, which would irreparably harm Defendants with no concomitant benefit to the Plaintiffs.

- Transferring the YouTube Channel to Plaintiffs would irreparably harm Defendants by defunding them and taking away their only source(s) of income (perhaps this is the actual purpose).

- Transferring the YouTube Channel to Plaintiffs wholesale before the Case is fully resolved would impair Defendants' ability to litigate and hire competent counsel.

- Transferring the YouTube Channel to Plaintiffs should be in full satisfaction of the Judgment since the damages outlined reflect a *valuation* of Plaintiffs' interests and plaintiffs are required to elect their remedies.

Accordingly, the balance of hardships weighs in favor of denying the injunction. Not issuing the injunction would not harm Plaintiffs in the least, except for their speculative fears of

sabotage, while issuing the injunction would irreparably damage Defendants. This Court need not go as far as Plaintiffs request to properly balance the equities—it may simply enjoin Defendants from sabotaging the YouTube Channel, if that is what is called for.

### E.  Plaintiffs Have Not Named All Necessary Parties—Therefore, Injunctive Relief May Not Issue

Plaintiffs have not named YouTube or Google, who actually host the current content and rights to the YouTube Channel. See Plaintiffs' Trial Exhibit No. __. While it may be the case that Google would nonetheless voluntarily comply with a Court Order, the law requires that all parties impacted or governed by an injunction must be served with notice of the proceedings and given an opportunity to be heard. *See* FRCP 54(d)(2).

Plaintiffs have not done that.

### F.  This Court Should Order Sufficient Bond Be Posted to Protect Defendants' Rights

A bond is mandatory. Rule 65(e) provides that "The court may issue a preliminary injunction or a temporary restraining order ***only if*** the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."

While Plaintiffs contend that they are seeking a "permanent injunction," they have not given any grounds, nor cited any evidence, for how this would properly be considered a permanent injunction. They are seeking to permanently put the YouTube Channel in their custody, but as discussed above, this is not the law.

Moreover, under Texas law, if the judgment is found invalid or is set aside, then Defendants would be "entitled to recover from the judgment creditor the market value of the person's property that has been seized through execution of a writ issued by a court if the judgment on which execution is issued is reversed or set aside but the property has been sold at

execution." *See* Tex. Civ. Prac. & Rem. Code § 34.022.  Plaintiffs cannot demonstrate that they have sufficient funds to guarantee that, should this verdict be set aside for any of the reasons or deficiencies discussed, that they would be able to return the YouTube Channel substantially in the form it is in, or otherwise compensate Plaintiffs for the proper market value of the YouTube Channel.

Accordingly, if this Court enters such an injunction, Defendants request that a bond worth $725,000 be posted to the Court's register by Plaintiffs in order to protect Defendants' rights.

## IV.

## <u>CONCLUSION</u>

For the foregoing, in the event this Court decides it has subject matter jurisdiction, Defendants respectfully request that this Court (i) abate entry of judgment, or (ii) stay its enforcement and deny injunctive relief pending decision on Defendants' post-verdict Motions. Respectfully submitted this 13th Day of April, 2016.

Respectfully submitted,

**FRIEDMAN & FEIGER, LLP**

/s/ Mazin A. Sbaiti
By:_____
    **Mazin A. Sbaiti**
    State Bar No. 24058096
    mazin@fflawoffice.com
    **Eric M. Friedman**
    State Bar No. 24090106
    efriedman@fflawoffice.com

5301 Spring Valley Road, Suite 200
Dallas, Texas 75254
(972) 788-1400 (Telephone)
(972) 788-2667 (Telecopier)
**ATTORNEYS FOR DEFENDANTS**

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on April 13, 2016, I electronically filed the foregoing document with the Clerk of Court for the U.S. District Court for the Northern District of Texas, Dallas Division, using the electronic case filing system of the Court.  The electronic case filing system will send a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept the Notice as service of this document by electronic means.

  /s/  Mazin Sbaiti                   
Attorney
